STATE OF MINNESOTA

IN SUPREME COURT

A13-1820

Court of Appeals
Gildea, C.J.
Dissenting, Page, J.

In the Matter of the Welfare of the
Child of: R.D.L. and J.W., Parents.

Filed: September 10, 2014
Office of Appellate Courts

_____

William Ward, Chief Hennepin County Public Defender, James A. Kamin, Assistant Public Defender, Minneapolis, Minnesota, for appellant.

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Bruce Jones, Lariss Jude, Faegre Baker Daniels LLP, Minneapolis, Minnesota; and

Shirley Reider, Saint Paul, Minnesota, for Guardian Ad Litem.

_____

S Y L L A B U S

1.      Because the right to parent is a fundamental right, statutes that infringe on this fundamental right are subject to strict scrutiny under the equal protection provisions of the United States and Minnesota Constitutions.

2.      Assuming, without deciding, that a strict scrutiny analysis applies and that within that analysis a claimant must show at the threshold that he or she is "similarly situated" to challenge a statute on equal protection grounds, parents facing a subsequent

petition to terminate their parental rights, whether those rights were terminated voluntarily or involuntarily, are similarly situated.

3. The rebuttable statutory presumption of parental unfitness found in Minn. Stat. § 260C.301, subd. 1(b)(4) (2012), is narrowly tailored to serve a compelling government interest, and therefore does not violate the equal protection provisions of the United States and Minnesota Constitutions.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

The question presented in this case is whether Minn. Stat. § 260C.301, subd. 1(b)(4) (2012), which provides that parents who previously have had their parental rights to children involuntarily terminated are presumed to be palpably unfit to parent other children, violates the equal protection provisions of the United States and Minnesota Constitutions. The juvenile court and the court of appeals found that the statute does not violate either constitutional provision. Because we conclude that the presumption is narrowly tailored to serve a compelling government interest, we affirm.

On September 15, 2011, respondent Hennepin County Human Services and Public Health Department filed a Petition for Children in Need of Protection or Services ("CHIPS") on behalf of four children of parents J.W. (father) and appellant R.D.L. (mother). The petition alleged, among other things, that the mother was engaging in prostitution out of a Brooklyn Center hotel in the children's presence, that the father had physically abused the mother in front of their children, and that the mother used illegal

drugs in front of the children. The juvenile court found that the children were in need of protection and services and issued an order placing them in foster care.

Eight months later, on May 3, 2012, the County filed a petition to terminate the parents' rights to the four children, alleging that the parents failed to comply with the case plans designed to reunite them with their children. *See* Minn. Stat. § 260C.301, subd. 1(b)(5) (2012) (a petition to terminate parental rights may allege, for a child in foster care, that "reasonable efforts . . . have failed to correct the conditions leading to" that placement); *see also* Minn. Stat. § 260C.212, subd. 1 (2012) (requiring an out-of-home case plan for a child placed in foster care that provides for reunification). The case plans required that the parents follow recommendations made after chemical dependency, mental health, and parenting assessments; provide random urine tests to demonstrate sobriety; and obtain safe, stable, and suitable housing. The mother's case plan required her to cut off contact with the father, and the father's case plan required that he seek anger management treatment. The mother took advantage of some of the services the County offered, but ultimately did not complete any components of her case plan. The father also did not comply with the case plan, and he refused to accept any of the services.

A few weeks after the County filed its petition to terminate the parents' rights to the four children, the mother gave birth to a fifth child, who is the subject of this action. On July 27, 2012, less than a week before trial began on the County's petition to terminate parental rights to the four older children, the County made an offer to the mother concerning her fifth child. The County proposed to agree "on the record" that if

3

the mother would seek to voluntarily terminate her rights to the four older children, the County would not use that termination as a basis to seek termination of parental rights to her newborn child, "absent a separate reason for child protection involvement." The mother rejected the County's offer.

After a two-day trial, the juvenile court terminated the parents' rights to the four older children.[1] Minnesota Statutes § 260C.301, subd. 1(b) (2012), provides that parental rights can be involuntary terminated if the court finds that at least one of nine conditions exist. The court found by clear and convincing evidence that reasonable efforts had failed to correct conditions leading to the children's out-of-home placement, under Minn. Stat. § 260C.301, subd. 1(b)(5), and terminated the parents' rights. The mother appealed, and the court of appeals affirmed the termination.[2] *In re Welfare of Children of R.D.L.*, No. A12-1758, 2013 WL 869950 (Minn. App. Mar. 11, 2013), *rev. denied* (Minn. Apr. 16, 2013).

Two days after the juvenile court's decision, the County filed a CHIPS petition on behalf of the fifth child, the newborn. After the County located and placed the baby into

---

[1] The father was found to be in default because he did not attend the hearing. *In re Welfare of Children of R.D.L.*, Nos. 27-JV-11-8351, 27-JV-12-4240, Order at 2 (Henn. Cnty. Dist. Ct. filed Aug. 28, 2012).

[2] The juvenile court also found that two other statutory grounds for termination existed: that the mother substantially, continuously and repeatedly neglected to comply with the duties imposed upon her by the parent-child relationship, under Minn. Stat. § 260C.301, subd. 1(b)(2), and that the children were neglected and in foster care, under Minn. Stat. § 260C.301, subd. 1(b)(8). But the court of appeals upheld only the finding under Minn. Stat. § 260C.301, subd. 1(b)(5). *In re Welfare of Children of R.D.L.*, No. A12-1758, 2013 WL 869950, at *2-3 (Minn. App. Mar. 11, 2013), *rev. denied* (Minn. Apr. 16, 2013).

protective care, the County filed a petition to terminate the parents' rights to the newborn, alleging that four of the statutory grounds for termination existed, including, as relevant here, that the mother was "palpably unfit to be a party to the parent and child relationship." Minn. Stat. § 260C.301, subd. 1(b)(4). A parent is presumed to be "palpably unfit to be a party to the parent and child relationship" if "the parent's parental rights to one or more other children were involuntarily terminated." *Id.*[3]

At a subsequent hearing, the father offered some, "albeit scant," evidence in an effort to overcome the presumption. The mother offered no evidence to rebut the presumption. Instead, she argued that the statutory presumption, Minn. Stat. § 260C.301, subd. 1(b)(4), is unconstitutional. The mother argued that the presumption of unfitness violates due process and equal protection under the United States and Minnesota Constitutions because the presumption applies only to parents whose parental rights are terminated involuntarily, and excludes those parents who voluntarily agree to terminate their parental rights.

The juvenile court rejected the mother's constitutional challenge and found that the father failed to overcome the presumption. The court found by clear and convincing evidence that both parents failed to overcome the presumption of unfitness and that it was in the child's best interests to terminate their parental rights. The court of appeals

---

[3] The original petition alleged these grounds against only the mother, noting that paternity "had not been established" for the child yet. Because the father's paternity was established by the time of the hearing, the juvenile court then considered the allegations against both of the parents.

affirmed.  *In re Welfare of Child of R.D.L.*, No. A13-1820, 2014 WL 1272408, at \*3 (Minn. App. Mar. 31, 2014).

The mother filed a petition for review with our court, arguing that the presumption of palpable unfitness found in Minn. Stat. § 260C.301, subd. 1(b)(4), violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Minnesota Constitution.  We granted review.[4]  On July 15, 2014, we issued an order affirming the court of appeals with this opinion to follow.

I.

The question presented in this case is whether the statutory presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), violates equal protection guarantees in the United States and Minnesota Constitutions.  The Equal Protection Clause of the Fourteenth Amendment guarantees that no state can "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The equal protection provision of the Minnesota Constitution guarantees that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers."  Minn. Const. art. I, § 2.  Although the text of the provisions is different, claims made under them are analyzed using the same principles.  *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn. 2000).  Both guarantees begin with the mandate that all similarly situated individuals must be treated alike.  *Schuette v. City of Hutchinson*,

---

[4]     The father is not a party to this appeal.

6

843 N.W.2d 233, 239 (Minn. 2014).  Whether a statute violates the Constitution is a question that we review de novo.[5]  *Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 428 (Minn. 2014).

A.

The court of appeals determined that the mother could not make a successful equal protection claim because "parents who voluntarily terminate their parental rights are not situated similarly to those who have their rights terminated involuntarily."  *In re Welfare of Child of R.D.L.*, No. A13-1820, 2014 WL 1272408, at *2 (Minn. App. Mar. 31, 2014) (citation omitted) (internal quotation marks omitted).  The court found that the two sets of parents are not similarly situated because a parent who has had parental rights involuntarily terminated has been " 'adjudicated as failing to adequately provide for the child's health and safety,' " while a parent who has voluntarily terminated rights " 'has not been so adjudicated.' "  *Id.* (quoting *In re Child of P.T.*, 657 N.W.2d 577, 589 (Minn. App. 2003), *rev. denied* (Minn. Apr. 15, 2003)).  The mother argues that the court of appeals erred because "[i]t is simply not correct to say that any articulable difference

---

[5]     The County contends that we do not need to address the constitutional question because relying on the presumption of unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), is unnecessary.  Specifically, the County argues that we can and should affirm the termination of the mother's parental rights without using the statutory presumption of unfitness due to "other substantial evidence" that the County contends is "sufficient" to support the juvenile court's decision.  The juvenile court, however, relied on the presumption to terminate the mother's parental rights to the fifth child.  Affirming the termination order without relying on the presumption would require us to go beyond the findings of the juvenile court and engage in our own fact-finding, a function that our court does not undertake.  *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) ("[A]ppellate courts may not 'sit as factfinders,' and are 'not empowered to make or modify findings of fact.' " (citations omitted)).

between the two groups renders them 'not similarly situated' for equal protection purposes." Rather, she says, the differences between the two classes "must be relevant to the state interest being asserted." The County and the Guardian Ad Litem (GAL), on the other hand, argue that the two groups of parents are not similarly situated, and therefore, the mother's claim fails before it can even get over this "threshold" question.

We have required that a party establish that he or she is similarly situated to persons who have been treated differently in order to support an equal protection claim. *See, e.g.*, *State v. Cox*, 798 N.W.2d 517, 521 (Minn. 2011). We have explained that "the Equal Protection Clause does not require the state to treat things that are different in fact or opinion as though they were the same in law." *Id.* (citations omitted) (internal quotation marks omitted). In order to determine whether two groups are similarly situated, we focus on whether the groups are alike in all relevant respects. *Id. at* 522.

As discussed below, we subject the statutory presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), to strict scrutiny, rather than rational basis, review. Supreme courts in two neighboring states have expressed concern about using the "similarly situated" threshold within the strict scrutiny framework. *See Varnum v. Brien,* 763 N.W.2d 862, 884 n.9 (Iowa 2009) (expressing reservations about "similarly situated" analysis as a threshold test); *In re Mental Commitment of Mary F.-R.,* 839 N.W.2d 581, 596 (Wis. 2013) (declining to apply a "similarly situated" threshold analysis).

In this case, the parties do not squarely present the question of whether the "similarly situated" threshold test should be applied when the statute at issue is subject to strict scrutiny review. Instead, the parties appear to assume that the mother must be

8

similarly situated to the parents to whom she seeks to compare herself for purposes of the equal protection question, regardless of the level of scrutiny applied. We therefore have no occasion in this case to determine, as a matter of law, whether the "similarly situated" threshold is applied in strict scrutiny cases.

Nevertheless, if we assume, without deciding, that the "similarly situated" threshold applies, we disagree with the court of appeals' analysis and conclude that parents who have lost parental rights previously, whether voluntarily or involuntarily, are similarly situated for the purposes of the equal protection claim before us. Minnesota Statutes § 260C.001, subd. 2 (2012), provides that "[t]he paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." *Id.*, subd. 2(a). The statute also declares that one purpose of juvenile protection proceedings is "to provide judicial procedures that protect the welfare of the child." *Id.*, subd. 2(b)(2). Accordingly, when addressing whether the two groups are alike in all relevant respects, we must address whether they are similarly situated in a way that is relevant to protecting the welfare and best interests of the child. *See Cox*, 798 N.W.2d at 522. We conclude that the parents at issue here are similarly situated.

Minnesota Statutes § 260C.301 (2012), which addresses the termination of parental rights, undoubtedly classifies parents into two different groups. A parent can "voluntarily" terminate parental rights by giving written consent supported by "good cause." Minn. Stat. § 260C.301, subd. 1(a). By contrast, a court can involuntarily terminate a parent's rights if it finds clear and convincing evidence that at least one of nine statutory factors is present. Minn. Stat. § 260C.301, subd. 1(b). These factors

9

include that the parent has abandoned the child, or that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon him or her by the parent and child relationship. Minn. Stat. § 260C.301, subd. 1(b)(1)-(2); *see* Minn. R. Juv. Prot. P. 39.05, subd. 2(a).

Despite these differences, we conclude that the two groups of parents before us are similarly situated, at least with respect to the purposes of Minn. Stat. § 260C.301. When we focus on the best interests of the children, which is the "paramount consideration" under the statute, *id.*, subd. 7, the two classes of parents are the same. This is true because in both circumstances, whether parental rights were terminated voluntarily or involuntarily, the juvenile court must have concluded that the best interests of the children required termination. *See id.*

B.

Concluding that the two sets of parents are similarly situated, we next consider what level of scrutiny the statute, Minn. Stat. § 260C.301, subd. 1(b)(4), must satisfy if it is to survive an equal protection challenge. We have held that statutory classifications are generally permissible as long as they rationally further some legitimate state purpose. *See Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 411 (Minn. 2002). If, however, a statute classifies based on a suspect class or impinges on fundamental rights, the classification must meet strict scrutiny, meaning that it must be narrowly tailored to serve a compelling government interest. *See Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 725 (Minn. 2008).

The U.S. Supreme Court has long recognized the fundamental nature of parental rights. In *Santosky v. Kramer*, the Supreme Court noted that the "fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." 455 U.S. 745, 753 (1982). We have similarly held that a parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right. *SooHoo v. Johnson*, 731 N.W.2d 815, 820 (Minn. 2007).[6] Because the right to parent is a fundamental one, we will subject the statute at issue, Minn. Stat. § 260C.301, subd. 1(b)(4), to strict scrutiny.

C.

Once a statute is subject to strict scrutiny, it is "not entitled to the usual presumption of validity." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973). Rather, the County must carry a "heavy burden of justification," *id.* (citation omitted) (internal quotation marks omitted), to show that the classification is narrowly tailored to serve a compelling government interest. *Greene*, 755 N.W.2d at 725 (citation omitted) (internal quotation marks omitted); *see also Skinner v. Oklahoma ex rel.*

---

[6]  Although these cases involve the Due Process Clause of the Fourteenth Amendment, fundamental rights are protected by both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See United States v. Harris*, 106 U.S. 629, 638-39 (1883) (noting that the Fourteenth Amendment "prohibits a State from depriving any person of life, liberty, or property without due process of law, or from denying to any person the equal protection of the laws," and that the Amendment furnishes a guarantee to citizens "against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society" (citation omitted) (internal quotation marks omitted)).

*Williamson*, 316 U.S. 535, 541 (1942) ("[S]trict scrutiny of the classification . . . is essential . . . .").

In the due process context, we have held that the government has a compelling interest in its role as parens patriae in promoting relationships among those in recognized family units in order to protect the general welfare of children. *SooHoo*, 731 N.W.2d at 822. The government also has a compelling interest in "identifying and protecting abused children," *R.S. v. State*, 459 N.W.2d 680, 689 (Minn. 1990), and in "safeguarding the physical and psychological well-being" of children, *Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (citation omitted) (internal quotation marks omitted).

The mother does not dispute that the government has a compelling interest in protecting children. But she argues that the government interest served by the presumption at issue here is not generally to protect children, but rather to "conserve litigation resources and spare the County the time and expense of an actual trial," and she contends that such an interest is not compelling. We disagree. Proceedings involving endangered children are not expedited so that the government is able to conserve government resources. These proceedings are expedited because a quick resolution is essential for the best interests of children who are in need of protection. *See In re Welfare of J.R.*, 655 N.W.2d 1, 5 (Minn. 2003) ("Each delay in the termination of a parent's rights equates to a delay in a child's opportunity to have a permanent home . . . ."); *see also* Chief Justice Kathleen Blatz, *The State of the Judiciary 2001*, 58 Bench & B. of Minn. 27, 30 (Aug. 2001) (noting that children in the child protection system are not just battling the experience of abuse and neglect, but the experience "of

12

being caught up in the cogs of a bureaucracy for years upon years, longing for a family who will love them and hating how long it takes to find one"). In fact, that resources are saved through operation of the statutory presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), is merely a byproduct of the overarching objective of the child protection system—protecting the best interests of children by extricating them from dangerous situations quickly. *See, e.g.*, *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990) ("Advancing the child's best interests is the state's paramount goal even when circumstances require intervention.").

The statutory presumption directly serves the compelling government interest of protecting children because it facilitates the more expeditious resolution of cases involving children in need of protection. The principle that child protection cases are to receive priority and be resolved quickly is a thoroughly engrained policy that both the legislative and executive branches endorse and support. *See* Minn. Stat. § 260C.151, subd. 1 (2012) ("The court shall give docket priority to any child in need of protection or services . . . ."); Minn. Stat. § 260C.301, subd. 7 ("In any proceeding under this section, the best interests of the child must be the paramount consideration . . . ."); Minn. R. Juv. Prot. P. 1.02(f), (i) (noting that the purpose of the juvenile protection procedural rules is to provide a "just, thorough, *speedy*, and *efficient*" determination of each juvenile protection matter, and to "reduce unnecessary delays in court proceedings" (emphasis added)); Minn. R. Juv. Prot. P. 1.02 advisory comm. cmt. 1999 (amended 2014) (noting that the "overall objective" of Minnesota's juvenile courts is to "move *expeditiously* toward a resolution of the matter in such a way as to secure that which is in the best

13

interests of the child while ensuring due process for all of the parties" (emphasis added));
*see also* Minn. Jud. Council Policy 601 ("It is the policy of the Judicial Branch that juvenile protection cases receive docket priority as required under Minn. Stat. § 260C.151, subd. 1, and be expedited in conformance with state and federal requirements with the goal of serving the best interests of children."); Chief Justice Kathleen Blatz, *The State of the Judiciary 2001*, 58 Bench & B. of Minn. 27, 30 (Aug. 2001) (noting that the purpose of the Children's Justice Initiative is to ensure that "every Minnesota child, regardless of location, has the best possible chance for a safe and permanent home, *at the earliest possible time*" (emphasis added)). Under our law, children are not to be kept waiting, uncertain who will raise them or where they will grow up. *See, e.g.*, *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn. 1986) ("We have previously observed the importance of emotional and psychological stability to a child's sense of security, happiness and adaptation, as well as . . . the fundamental significance of permanency to a child's development."). The statutory presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), which provides a mechanism to shorten a termination trial in the narrow instance in which clear and convincing evidence supported a previous finding that a child's best interests required termination, directly serves the compelling government interest of protecting these children.

But, the mother argues, the statutory presumption cannot survive strict scrutiny because it is not narrowly tailored to serve the government's compelling interest in protecting children. To survive strict scrutiny, a statute can be neither overinclusive nor underinclusive; rather, it must be "precisely tailored to serve the compelling state

interest." *See Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). The Supreme Court has repeatedly sought to "dispel the notion that strict scrutiny is 'strict in theory, but fatal in fact.'" *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995) (citation omitted). And the Court has held that narrow tailoring "does not require exhaustion of every conceivable . . . alternative," nor does it require a "dramatic sacrifice" of the compelling interest at stake. *Grutter v. Bollinger*, 539 U.S. 306, 339-40 (2003), *superseded by constitutional amendment as recognized in Schuette v. Coal. to Defend Affirmative Action*, ___ U.S. ___, 134 S. Ct. 1623 (2014).

The mother argues that the statutory presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), does not meet the narrow tailoring requirement because it is underinclusive in that there are "demonstrably unfit" parents who voluntarily terminated their rights, but in a subsequent termination proceeding are not subject to the operation of a presumption of parental unfitness. She argues that the government's compelling interest "is at least as compelling when a palpably unfit parent voluntarily terminates as when a palpably unfit parent chooses to litigate." No matter how "abusive or neglectful a parent may have been," she says, the parent avoids later application of the presumption by choosing to voluntarily terminate his or her parental rights. The mother's argument is not convincing.

To be sure, the presumption of unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), does not apply to those parents who voluntarily seek to end their parent-child relationship. It is also true that parents may seek to terminate their rights for any number of reasons that may have nothing to do with their fitness to be parents. That the

15

"palpably unfit" presumption in subdivision 1(b)(4) does not apply to such parents therefore does not equate to a conclusion that the statute is not narrowly tailored. The purpose of the narrow tailoring requirement is to "ensure that the means chosen fit th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate." *Grutter*, 539 U.S. at 333 (citation omitted) (internal quotation marks omitted). The statutory classification at issue here is closely tied to the government's goal of protecting children, and it meets the narrow tailoring requirement.

A natural parent is presumed to be suitable "to be entrusted with the care of his child" and it is "in the best interest of a child to be in the custody of his natural parent." *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn. 1980). When, however, the government has, in an initial proceeding, overcome that presumption of fitness through clear and convincing evidence that a parent cannot be entrusted to care for his or her children, *see* Minn. Stat. § 260C.317, subd. 1, the statutory presumption of unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), relieves the government of its burden to again overcome the natural parent's presumption of fitness, at least until the parent produces evidence warranting a finding of fitness. *See, e.g.*, *Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522 (Minn. 2007) (stating that a presumption "control[s] the burden of going forward with the evidence," and once rebutted, the other party, "in order to prevail, must meet its burden of persuasion" (citation omitted) (internal quotation marks omitted)); *see also In re Welfare of Child of J.W.*, 807 N.W.2d 441, 445-46 (Minn. App. 2011) (explaining that the presumption is overcome with evidence sufficient to " 'justify a finding of fact' that he or she is not palpably unfit" (quoting Minn. R. Evid. 301 comm.

16

cmt.—1977)), *rev. denied* (Minn. Jan. 6, 2012). In other words, Minn. Stat. § 260C.301, subd. 1(b)(4), is narrowly drawn to operate only when the juvenile court has already once concluded based on clear and convincing evidence establishing one or more of nine specific statutory reasons, that the actions of the parent warrant severing the parent-child relationship. *See* Minn. Stat. § 260C.301, subd. 1(b) (listing nine "conditions" that could support involuntary termination of parental rights); *id.*, subd. 1(b)(4) (presuming that parent is unfit if parental rights to other children were terminated "involuntarily"). Given the presumption's limited operation, "there is little or no possibility that the motive for the classification was illegitimate." *Grutter*, 539 U.S. at 333.

We recognize that the statutory presumption, standing alone, may not meet the heavy burden of narrow tailoring. The U.S. Supreme Court has noted that "[p]rocedure by presumption is always cheaper and easier than individualized determination," and has said that in family law matters, presumptions that foreclose individual determinations on determinative issues can "needlessly risk[] running roughshod over the important interests of both parent and child." *Stanley v. Illinois*, 405 U.S. 645, 656-57 (1972). But the presumption we are faced with today does not forsake an individual determination. To the contrary, several factors establish that even when the presumption in Minn. Stat. § 260C.301, subd. 1(b)(4), operates, an individualized determination is still required and still made.

First, termination of parental rights is always discretionary with the juvenile court. Language throughout the juvenile protection laws emphasizes that the court "may," but is not required to, terminate a parent's rights when one of the nine statutory criteria is met.

17

*E.g.*, Minn. Stat. § 260C.301, subd. 1 ("The juvenile court *may* upon petition, terminate all rights of a parent to a child . . . if it finds that one or more of the following conditions exist . . . ." (emphasis added)); Minn. Stat. § 260C.317, subd. 1 (2012) ("If, after a hearing, the court finds by clear and convincing evidence that one or more of the conditions set out in section 260C.301 exist, it *may* terminate parental rights." (emphasis added)). Accordingly, even if the presumption of unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), operates and is not rebutted, termination of parental rights is still a matter of discretion for the juvenile court.

Second, the presumption is easily rebuttable. The court of appeals has held that when the presumption of unfitness applies, a parent rebuts the presumption by introducing evidence that would " 'justify a finding of fact' that [the parent] is not palpably unfit," and whether the evidence satisfies the burden of production is determined on a case-by-case basis. *In re Welfare of Child of J.W.*, 807 N.W.2d at 445-46 (quoting Minn. R. Evid. 301 comm. cmt.—1977), *rev. denied* (Minn. Jan. 6, 2012); *see also Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 623 (Minn. 1988) (explaining that once a presumption arises, the "burden of producing evidence then shifts to the [other party] to . . . produce sufficient evidence to raise a genuine issue of fact"). This standard, which is a much lower bar than the "clear and convincing" standard shouldered by the County, Minn. Stat. § 260C.317, subd. 1, is the appropriate standard. For the statute to survive under a strict scrutiny analysis, the burden imposed by the presumption cannot be a heavy one. Rather, the parent needs to produce only enough evidence to support a finding that the parent is suitable "to be entrusted with the care" of

the children. *In re Welfare of Clausen*, 289 N.W.2d at 156; *see also* Minn. Stat. § 645.17 (2012) (providing that courts should presume that "[t]he legislature does not intend to violate the Constitution of the United States or of this state").

Third, we have made clear that an involuntary termination of parental rights is proper only when at least one statutory ground for termination is supported by clear and convincing evidence *and* the termination is in the child's best interest. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 54-55 (Minn. 2004). Here, while the juvenile court relied on the presumption of parental unfitness in its order terminating the mother's rights to her fifth child, the court also separately found "[c]lear and convincing evidence" that it was "in the best interests of the child that any and all parental rights be terminated." This separate statutory requirement for a best-interests consideration, Minn. Stat. § 260C.301, subd. 7, ensures that a termination is not ordered simply because a parent introduces no evidence to overcome the presumption. In other words, and to be clear, just as termination based solely on the child's best interests is improper, *R.W.*, 678 N.W.2d at 54-55 (stating that "[t]ermination of . . . parental rights solely on the basis that termination would be in the children's best interests" ignores the "clear statutory directive" requiring a statutory basis in addition to a best interests finding), termination based solely on a statutory presumption is improper. The juvenile court also must independently find in each case, even with a presumption of unfitness, that termination is in the child's best interests.

Together, these procedural protections ensure that the Minn. Stat. § 260C.301, subd. 1(b)(4), is narrowly tailored, that the child's best interests remain the paramount

19

consideration, and that the presumption does not improperly encompass those who have had their parental rights terminated previously merely because those parents are not able to present evidence establishing that they are fit parents. *See, e.g.*, *Fla. Dep't of Children & Families v. F.L.*, 880 So. 2d 602, 609-10 (Fla. 2004) (finding that a rebuttable presumption in the child welfare context meets the narrowly tailored requirement when the court has to find in each case that (1) there is a substantial risk of significant harm to the current child; and (2) the termination of parental rights is the least restrictive means of protecting the child from harm).

Based on our analysis, we conclude that Minn. Stat. § 260C.301, subd. 1(b)(4), is narrowly tailored to serve the government's compelling interest. We therefore hold that the statute does not violate the equal protection provisions of the United States or Minnesota Constitutions

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. I do so because I conclude that the presumption of palpable unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4) (2012), does not survive strict scrutiny.

R.D.L. faced a termination of parental rights hearing with respect to her four oldest children because she was engaging in illegal activity in their presence and failed to comply with her case plan. *In re Welfare of Children of R.D.L.*, Nos. 27-JV-11-8351, 27-JV-12-4240, Order at 2 (Henn. Cnty. Dist. Ct. filed Aug. 28, 2012). Before the hearing, R.D.L. gave birth to another child. Hennepin County proposed that it would not use the termination proceeding relating to the four oldest children as a basis for terminating R.D.L.'s parental rights to her newborn child if R.D.L. agreed to voluntarily terminate her parental rights to her four oldest children. R.D.L. rejected the County's proposal and, after the hearing, had her parental rights to the four oldest children involuntarily terminated. Subsequently, the County filed a petition to terminate R.D.L.'s parental rights to the newborn. At trial, the County, relying on Minn. Stat. § 260C.301, subd. 1(b)(4), alleged that R.D.L. was "palpably unfit" to parent her newborn. Section 260C.301, subdivision 1, provides that a parent is presumed to be palpably unfit if the parent's rights to another child were previously involuntarily terminated. In response, R.D.L. moved to declare the statutory presumption unconstitutional under the equal protection provisions of the United States and Minnesota Constitutions. The district court denied the motion and terminated R.D.L.'s parental rights to the newborn. The court of appeals affirmed. Here, R.D.L. contends that Minn. Stat. § 260C.301,

subd. 1(b)(4), which does not apply to demonstrably unfit parents who voluntarily terminated their parental rights, is not narrowly tailored because the statute is underinclusive. R.D.L. also contends that this classification does not serve a compelling government interest.

## I.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article I, Section 2, of the Minnesota Constitution provides, "No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." "Both clauses have been analyzed under the same principles and begin with the mandate that all similarly situated individuals shall be treated alike, but only 'invidious discrimination' is deemed constitutionally offensive." *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn. 2000) (citation omitted). We typically review equal protection challenges under the rational basis standard. *Id.* If the classification involves a suspect class or fundamental right, however, we apply the strict scrutiny standard. *Greene v. Comm'r of Dep't of Human Servs.*, 755 N.W.2d 713, 725 (Minn. 2008). Because this case involves a fundamental right—the right of parents to make decisions on "the care, custody, and control" of their children—strict scrutiny applies. *SooHoo v. Johnson*, 731 N.W.2d 815, 820 (Minn. 2007). Strict scrutiny is the most rigorous standard applied in equal protection cases. *Kahn v. Griffin*, 701 N.W.2d 815, 831 (Minn. 2005); *see Fullilove v. Klutznick*, 448 U.S. 448, 519 (1980) (Marshall, J.,

concurring) (" '[S]trict scrutiny' . . . is strict in theory, but fatal in fact."). To survive strict scrutiny, the statute "must be 'narrowly tailored and reasonably necessary to further a compelling governmental interest.' " *Greene*, 755 N.W.2d at 725 (quoting *Hennepin Cnty. v. Perry*, 561 N.W.2d 889, 897 n.7 (Minn. 1997)). Strict scrutiny in the context of fundamental rights focuses on whether the classification itself serves a compelling government interest, not whether the statute as a whole serves such an interest. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541-42 (1942).

## II.

Here, the classification is between parents who have in the past voluntarily terminated their parental rights and parents who have previously had their parental rights involuntarily terminated. Under Minn. Stat. § 260C.301, subd. 1(b)(4), parents in the latter group are presumed to be palpably unfit to parent their children while no such presumption applies to parents in the former group. The court identifies the compelling government interest in having the presumption as the prompt and permanent removal of children from unsafe parents. The court concludes that the classification is narrowly tailored because the district court retains discretion over whether to terminate parental rights, the parent can easily rebut the presumption, and the presumption does not shift the burden of proof from the County. Essentially, the court reasons that because the impact of the presumption is what the court concludes is minimal and, because procedural protections are in place, the statute is narrowly tailored. The court ignores the fact that encompassed within the narrowly tailored requirement is the additional requirement that a statute can be neither overinclusive nor underinclusive. *See Austin v. Mich. Chamber of*

*Commerce*, 494 U.S. 652, 666 (1990), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

R.D.L. argues that the classification in Minn. Stat. § 260C.301, subd. 1(b)(4), is underinclusive because it does not include parents who have voluntarily terminated their parental rights to other children. A statute is "overinclusive" if it "burden[s] more persons than necessary to cure the problem." *Black's Law Dictionary* 1279 (10th ed. 2014). A statute is underinclusive if it excludes persons that it should not. *See Orr v. Orr*, 440 U.S. 268, 272 (1979) ("In every equal protection attack upon a statute challenged as underinclusive, the State may satisfy the Constitution's commands either by extending benefits to the previously disfavored class or by denying benefits to both parties . . . .").

I conclude that the classification in Minn. Stat. § 260C.301, subd. 1(b)(4), is underinclusive because there is no compelling reason to exclude from the presumption of palpable unfitness parents who have in the past voluntarily terminated their parental rights. First, many parents who voluntarily terminate their rights satisfy the standards for involuntary termination.[1] In such cases, the only distinction between the two classes of parents is that parents whose rights were involuntarily terminated invoked their right to a hearing. *See Murphy v. Comm'r of Human Servs.*, 765 N.W.2d 100, 107 (Minn. App. 2009) ("In theory, there is a difference between a voluntary and involuntary termination of parental rights, but in actual practice, exactly the same conduct by a parent toward a

---

[1] The children of these parents have no less a need for protection.

child can lead to either a voluntary or an involuntary termination . . . .").  Second, it is not uncommon that parents voluntarily relinquish their rights to a child for reasons that would support an involuntary termination.  *See, e.g.*, *In re Welfare of D.D.G.*, 558 N.W.2d 481, 486 (Minn. 1997) (concluding that good cause existed for voluntary termination because of the parents' abusive relationship and drug use); *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 92, 95 (Minn. App. 2008) (holding that good cause was present because the parents had not completed their case plans and were chemically dependent); *In re Welfare of Child of R.A.S.*, No. A07-297, 2007 WL 2367554, at *2 (Minn. App. Aug. 16, 2007) (concluding that abandonment constitutes good cause).

Perhaps the best example of the lack of distinction between the two classifications as it relates to the asserted government interest in creating the two classes is R.D.L. herself.  Had R.D.L. agreed to Hennepin County's proposal and voluntarily waived her parental rights to her four older children, the statutory presumption of palpable unfitness would not have applied to her newborn child.  But having rejected the offer, the presumption applied.  In both cases, however, the facts with respect to R.D.L.'s ability to parent her newborn are exactly the same.  Thus, I can see no compelling reason or government interest in treating the two classifications of parents differently.  Indeed, it would appear that the only reason for treating the two classes of parents differently is to put pressure on parents to voluntarily terminate their parental rights rather than asserting their right to a hearing and putting the government to its proof.  Put another way, R.D.L. could have fit into either classification without any impact on her parental fitness or circumstances.  This illustrates that the principal distinction between parents who

voluntarily terminated their parental rights and parents, like R.D.L. here, whose rights are involuntarily terminated, is that parents in the latter group simply refuse to voluntarily terminate their rights. Because the distinction between the two classes of parents is marginal at best, the presumption of palpable unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), should apply to parents who have voluntarily terminated their rights. Since it does not, the presumption is underinclusive.

III.

Even if a statute is underinclusive, " 'perfection is by no means required.' " *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960)). The U.S. Supreme Court has upheld an underinclusive or overinclusive statute if the statute otherwise meets the appropriate level of scrutiny. *See id.* ("We accept such imperfection because it is in turn rationally related to the secondary objective of legislative convenience."). As indicated above, the applicable level of scrutiny here is strict scrutiny, which requires that the classification be narrowly tailored and reasonably necessary to meet a compelling governmental interest. *Greene v. Comm'r of Dep't of Human Servs.*, 755 N.W.2d 713, 725 (Minn. 2008).

According to the court, the compelling government interest served by the statutory presumption at issue is "protecting children" by "facilitat[ing] more expeditious resolution of cases involving children in need of protection." While the protection of children is a compelling government interest, the court ignores the well-recognized principle that the classification itself, not the statute, must serve a compelling government interest. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942). Thus,

the County must articulate a compelling government interest that is furthered by applying Minn. Stat. § 260C.301, subd. 1(b)(4), to one class of parents and not the other. I surmise that if the State has a compelling interest in quickly removing children from parents whose rights have been involuntarily terminated, the State has an equally compelling interest in quickly removing children from parents who voluntarily terminated their rights since parents who voluntarily terminate their rights often satisfy the standards for involuntary termination. This case illustrates why the State's interests do not change simply because a parent has voluntarily terminated her parental rights. The juvenile court presumed R.D.L. to be palpably unfit to care for her newborn because R.D.L.'s parental rights with respect to her oldest children had been involuntarily terminated. The County advocates that it had a compelling government interest in expeditiously protecting the newborn from an unsafe situation. But, had R.D.L. accepted the County's offer to voluntarily terminate her parental rights to her oldest children, the palpably unfit presumption would not have applied with respect to her newborn. Nevertheless, if the newborn needed protection from an unsafe environment, that need would not have dissipated simply because R.D.L. had agreed to voluntarily terminate her parental rights to her other children. R.D.L.'s history and parental fitness, and the newborn's need for protection, were the same irrespective of how R.D.L.'s rights to her other children were terminated. Thus, if the State has an interest in protecting children when the presumption applies, I see no reason for the State's interest to be any less simply because a parent had in the past accepted the County's offer to voluntarily terminate his or her rights to other children. Since the State has an equal interest in quickly removing children from parents

who voluntarily terminated their rights to other children, there is no compelling government interest that is furthered by applying Minn. Stat. § 260C.301, subd. 1(b)(4), to one class of parents and not the other.

Moreover, despite the articulated goal of expediting the removal of children in need of protection, the classification simply does not accomplish that goal. Here, R.D.L. faced two separate termination proceedings, one relating to her four oldest children in which the presumption was not applicable and one relating to her newborn child in which the presumption was applicable.

With respect to R.D.L.'s four oldest children, the County filed a child in need of protection or services (CHIPS) petition on September 15, 2011. The court terminated R.D.L.'s parental rights to her four oldest children on August 28, 2012, 11 months after the petition was filed. With respect to R.D.L.'s newborn child, the County filed a CHIPS petition on August 30, 2012. At this point, the County had the benefit of having already gathered ample evidence regarding R.D.L.'s parental fitness, and the County could rely on Minn. Stat. § 260C.301, subd. 1(b)(4), to help prove that R.D.L. was palpably unfit to care for her newborn child. However, even with sufficient evidence and with the presumption in place, the process of terminating R.D.L.'s parental rights was anything but prompt. The hearing to consider the termination of R.D.L.'s parental rights did not occur until July 31, 2013, and R.D.L.'s parental rights were not finally terminated until August 16, 2013, one year after the petition was filed. Given the fact that it took longer to terminate R.D.L.'s parental rights to her newborn with the presumption in place than it did to terminate R.D.L.'s parental rights to her older children without the presumption, it

is fair to say that neither the statutory presumption nor the classification did anything to expedite the termination of R.D.L.'s parental rights to her newborn child. Thus, it is clear that the classification as applied to the presumption is not reasonably necessary to meet a compelling government interest.

Finally, I note that the court holds that to rebut the presumption "the parent needs to produce only enough evidence to support a finding that the parent is 'suitable to be entrusted with the care' of the children." The court characterizes this standard as "a much lower bar than the 'clear and convincing' standard" the County must meet. If a parent is easily able to rebut the presumption of palpable unfitness, parents will often succeed in meeting this burden; therefore, the presumption will frequently be of little utility to the County. If the presumption often has little utility, then there is no compelling government interest.

IV.

While the court is correct that strict scrutiny applies to the classification at issue and that parents whose parental rights are involuntarily terminated are similarly situated to parents who voluntarily terminate their parental rights, the court's conclusion that the classification survives strict scrutiny is erroneous.