In the Matter of the WELFARE OF the CHILDREN OF R.W.

No. A03–262.

Supreme Court of Minnesota.

April 22, 2004.

Sherri Dawn Hawley, Walling, Berg, & Debele, P.A., Minneapolis MN, for Appellant's.

Arden Jay Fritz, Elk River, MN, for Respondent's.

Thomas Richards, Buffalo, MN, for Children's.

Barbara Onken, Guardian ad Litem, Elk River MN.

## OPINION

BLATZ, Chief Justice.

Following a contested hearing, the district court terminated appellant R.W.'s [1]

---

1. The initials of appellant, the children, and the children's mother are used in this opinion in accordance with Minn. R. Juv. Prot. 8.08, subd. 2, which provides, "The body of any decision filed in any Minnesota appellate

parental rights to two children he had by K.K. based on findings that (1) appellant had abandoned the children; (2) appellant had substantially, continuously or repeatedly neglected to comply with the duties imposed upon him by the parent and child relationship; (3) reasonable efforts had failed to correct the conditions leading to the out-of-home placement; and (4) the children were neglected and in foster care. *See* Minn.Stat. § 260C.301, subd. 1(b)(1)-(2), (5), (8) (2002). The district court also found that termination was in the best interests of the children. The court of appeals rejected the district court's findings of fact and concluded that no statutory grounds for termination existed, but affirmed termination of appellant's parental rights on the ground that termination was in the best interests of the children. We conclude that the court of appeals erred in affirming termination based solely on the best interests of the children but nonetheless affirm the termination of appellant's parental rights because we conclude that the district court's order terminating parental rights was based on clear and convincing evidence that statutory grounds for termination were met and that termination is in the best interests of the children.

Appellant and K.K. are the biological parents of J.L.W., born on May 20, 1996, and A.A.W., born on November 5, 1997. Appellant and K.K. never married, but appellant lived with K.K. until March 1999, at which time K.K. asked appellant to move out. While appellant lived with K.K., both he and K.K. provided only marginal care for the children. After moving out, appellant visited the children weekly and often stayed overnight at K.K.'s home. Appellant, who was on probation for selling methamphetamine, knew that K.K. used methamphetamine but he did not consider K.K.'s drug use to be a problem and had no concerns about the children being left in K.K.'s care.

On April 6, 2000, appellant was arrested on a burglary charge and for violating the terms of probation. He is currently incarcerated in Appleton, Minnesota, and his earliest possible release date is in October 2005.

Initially, K.K. wrote letters to appellant in an attempt to reunite with him. However, K.K. stopped corresponding with appellant in December 2001 after appellant made it clear that their relationship was over. Appellant never sent cards or letters to A.A.W. or J.L.W. directly, and he never provided any gifts or financial assistance to the children. Any contact appellant had with the children was indirect through his correspondence with K.K.

In October 2001, Sherburne County Social Services (county) filed a child in need of protection or services (CHIPS) petition alleging that the children were in need of protection based on K.K.'s use of methamphetamine and evidence that K.K. had left the children at her home without heat for four days under the supervision of a babysitter. At the time the CHIPS petition was filed, A.A.W. and J.L.W. were ages 5 and 3, respectively. Pursuant to court order, the children were placed in foster care.

Appellant learned of the CHIPS petition from K.K. in October 2001, and he received formal notice of the petition on or about November 1, 2001. The notice informed appellant that he had the right to participate in the decision-making process affecting the future of his children and included a card with a toll-free number for the county that he could call for that purpose. Accompanying the petition was a

court shall use the parent's and child's initials, not their names."

request by the county for background information on the children. Appellant did not respond to the petition, provide information requested by the county regarding Indian heritage, or otherwise contact the county. Instead, appellant decided to rely on K.K. to comply with her case plan in order to have the children returned to her. Appellant did not request information on how to contact his children in foster care, nor did he ever make any attempt to have contact with them.

On March 26, 2002, a county social worker sent a form to appellant asking appellant to agree to voluntary termination of his parental rights. This request was made based on representations by the children's mother that appellant had not been involved with the children for more than two years and on the fact that appellant had not contacted the county or the children following receipt of the November 1, 2001 notice of the CHIPS petition.

In response to the request for voluntary termination of his parental rights, appellant sent a letter requesting more time to contact family members to care for the children. However, appellant never provided the name of a relative who was interested in custody of the children and no member of his family ever contacted the county. Although appellant stated that he did not want to "lose" his children in the letter, he again did not request information about their whereabouts, their status, or how to initiate contact with them.

On July 19, 2002, appellant was personally served with a summons and petition to terminate his parental rights. At a district court hearing on August 27, 2003, K.K. voluntarily terminated her parental rights to A.A.W. and J.L.W. The district court terminated appellant's parental rights based on his failure to appear.

After receiving notice of the order terminating his parental rights, appellant wrote to the social worker and to the district court. In the letter to the district court, appellant claimed that he had telephoned the court on August 27 for the hearing, but had been placed on "hold" and never put through to the judge. Upon confirming that appellant had in fact attempted to participate by telephone, the district court granted appellant's motion to vacate the default termination order. A new trial was subsequently scheduled.

At trial, appellant testified that he did not respond to the CHIPS petition because K.K. told him that she would comply with her case plan and have the children returned to her. He further testified that he had "done everything that [he] could" to oppose termination after learning that the children would not be returned to K.K. On cross-examination, appellant acknowledged that the only action he took to prevent termination of his parental rights was to write two letters to the social worker and one letter to the district court. He admitted that he never contacted the children's guardian ad litem in the case or attempted to have contact with his children after they were placed in foster care. In contrast, appellant testified that while incarcerated he has had contact through letters and phone calls with another minor child, not the subject of the current petition.

At trial, the guardian ad litem for A.A.W. and J.L.W. testified that while the children asked about their mother when first placed in foster care and continue to do so, they have never spoken or inquired about their father. The guardian ad litem stated that she had not contacted appellant in the course of her evaluation because appellant had never responded to the CHIPS petition. She further testified that she had not considered appellant a permanent placement option because appellant

was incarcerated and it was not in the children's best interests to ·delay permanent placement to "wait[ ] for maybes."

In its order terminating appellant's parental rights, the district court found that appellant's claim that he had maintained a continuous relationship with the children while incarcerated was not credible. Instead, on the evidence before it, the court found that there was clear and convincing evidence to support termination of appellant's parental rights under four separate statutory criteria: (1) that appellant had abandoned the children; (2) that appellant substantially, continuously or repeatedly neglected to comply with the duties imposed upon him by the parent and child relationship and that reasonable efforts to correct the conditions that formed the basis for the petition would be futile; (3) that reasonable efforts had failed to correct the conditions leading to the out-of-home placement; and (4) that the children were neglected and in foster care. Minn.Stat. § 260C.301, subd. 1(b)(1)-(2), (5), (8). The court also found that termination was in the children's best interests because of their need for permanent placement.

Appellant appealed, challenging the district court's findings that statutory grounds for termination existed and that termination was in the children's best interests. Although the court of appeals rejected the district court's findings of fact and concluded that no statutory grounds for termination existed, the court of appeals nonetheless affirmed termination of appellant's parental rights. It did so on the basis that it was in the children's best interests because the children would have to wait at least two years before appellant would be available to parent them due to his incarceration.

We granted appellant's petition for further review to address whether the court of appeals erred in concluding that appel-

lant's parental rights could be terminated in the absence of statutory grounds for termination. If not, we must also address whether the court of appeals' decision should nonetheless be affirmed on the basis that the district court's findings as to the statutory grounds for termination are supported by clear and convincing evidence.

## I.

■ The court of appeals concluded that termination of appellant's parental rights was appropriate even though it concluded that no statutory grounds for termination existed. The court made its decision solely on the basis that termination was in the "best interests of the children." The determination of whether "best interests of the children," standing alone, is a sufficient basis to support termination of parental rights requires our court to interpret the termination statute, Minn.Stat. § 260C.301. Interpretation of a statute involves a question of law, which is subject to de novo review. *In re Welfare of J.M.*, 574 N.W.2d 717, 721 (Minn.1998).

■ Although Minn.Stat. § 260C.301, subd. 7, provides that the best interests of the child are the paramount consideration in determining whether parental rights should be terminated, the statute also provides that "at least one condition [for involuntary termination under Minn.Stat. § 260C.301, subd. 1(b) must be] found by the court."

■ In affirming termination based solely on the best interests of the children, the court of appeals ignored the clear statutory directive that parental rights cannot be terminated in the absence of at least one statutory ground for termination. Therefore, we hold that the court of appeals erred in affirming the termination of appellant's parental rights solely on the

basis that termination would be in the children's best interests.

## II.

Having held that the court of appeals erred in affirming termination based solely on the best interests of the children, we nonetheless affirm the court of appeals' decision because we conclude that statutory grounds for termination were established by clear and convincing evidence and that the court of appeals erred in concluding otherwise.

In reviewing an order terminating parental rights, "[w]e study the record carefully to determine whether the evidence is clear and convincing." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn. 2001) (citing *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980)). Termination of parental rights will be affirmed as long as at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the child's best interests. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396–97 (Minn. 1996). Having reviewed the record, we conclude that at least three of the grounds for termination found to exist by the district court were established by clear and convincing evidence.[2] Thus, the court of appeals erred in holding that none of the statutory grounds for termination were proven.

### A. Abandonment.

Minnesota Statutes § 260C.301, subd. 1(b)(1) provides that parental rights may be terminated if the district court finds "that the parent has abandoned the child." A presumption of abandonment arises if a parent has had no contact with the child on a regular basis and not demonstrated a consistent interest in the child's well-being for six months and social services "has made reasonable efforts to facilitate contact." Minn.Stat. § 260C.301, subd. 2(a)(1). However, reasonable efforts by the county to facilitate contact between the parent and the child are not required if the county is not seeking to use the presumption of abandonment. *In re L.A.F.*, 554 N.W.2d at 398.[3] Abandonment may be established in the absence of a presumption of abandonment if the parent has actually deserted the child and has "an intention to forsake the duties of parenthood." *Id.* (quoting *In re Staat*, 287 Minn. 501, 506, 178 N.W.2d 709, 713 (1970)).

In rejecting the district court's determination that appellant had abandoned his two children, the court of appeals concluded that the district court had based its finding of abandonment solely on the fact of appellant's incarceration. The court of appeals held that such a finding was improper under *In re Staat*, 287 Minn. at 506, 178 N.W.2d at 713 (holding that incarceration of parent, standing alone, does not constitute intentional abandonment but noting that fact of imprisonment may combine with other factors, such as parental neglect and withholding of parental affection, to support a finding of abandonment). In so holding, the court of appeals ignored the district court's finding that appellant was "not credible in his testimony that he

---

**2.** Because we conclude that the termination of parental rights was supported by three statutory grounds, it is not necessary to address whether there was clear and convincing evidence that appellant failed to comply with the duties imposed by the parent and child relationship under Minn.Stat. § 260C.301, subd. 1(b)(2).

**3.** *In re L.A.F.* involved the presumption of abandonment found in Minn.Stat. § 260.221, subd. 1a (1998). This statute was repealed in 1999 and replaced with Minn.Stat. § 260C.301. *See* Act of May 11, 1999, ch. 139, art. 3, § 29; art. 4, § 3, 1999 Minn. Laws 567, 678, 692. The presumption of abandonment is identical in both statutes.

maintained a continuous relationship with the minor children" as well as the district court's statement that it found abandonment "for reasons other than the mere fact of [appellant's] incarceration."

■ In addition to the fact that the record demonstrates that the district court did not rely solely on incarceration to find abandonment, the record is replete with other findings supporting a finding of abandonment. For example, the court found that appellant failed to maintain any direct contact with the children during incarceration, failed to inquire about their welfare after learning they had been placed in foster care, relied on the children's mother to assume sole responsibility for having the children returned to her, failed to respond to the CHIPS petition, and that appellant's actions indicated an intention to forsake the duties of parenthood. The court found that "[a]s a result of [appellant's] failure to maintain contact with his children, the parent-child relationship between them is now nonexistent." We therefore conclude that there is clear and convincing evidence that appellant abandoned the children as set forth in Minn.Stat. § 260C.301, subd. 1(b)(1), and hold that the district court did not err.

### B. Failure of reasonable efforts to correct conditions leading to out-of-home placement.

■ The district court also found that termination of parental rights was appropriate based on the failure of reasonable efforts to correct the conditions leading to the out-of-home placement under Minn. Stat. § 260C.301, subd. 1(b)(5). The district court concluded that "there is nothing the State can do to foster reunification of [appellant] with his children[ ] due to his own action of becoming incarcerated * * * and his failure to maintain any type of meaningful relationship with the children."

The court of appeals concluded that termination under subdivision 1(b)(5) was erroneous because the county did not provide any services to appellant. Implicit in the court of appeals' analysis is the conclusion that the county must provide or attempt to provide a case plan to parents who have shown but minimal interest or involvement with their children or the CHIPS proceeding. We reject this conclusion. Such a requirement would put an impossible burden on counties to provide services to a parent who has chosen not to respond to a CHIPS petition despite being given the opportunity to do so and would force counties to attempt to reunify children with a parent who has little interest in reunification.

■ While subdivision 1(b)(5) does not expressly excuse the failure to make "reasonable efforts" based on futility, "reasonable efforts," by definition, does not include efforts that would be futile. As the district court correctly noted, nothing in state law required the county to facilitate contact between appellant and the children to assist appellant in *establishing* a relationship with the children. The purpose of the child-protection laws is not to create relationships between children and their biological parents where none previously existed but rather to preserve existing relationships where reunification in the foreseeable future is possible and such relationships are in the children's best interests. *See* Minn.Stat. § 260C.001, subd. 3 (2002) (indicating that purpose of laws relating to termination of parental rights is to secure permanent placement for children where child cannot be reunited with parents in a safe and permanent home). We therefore conclude that the district court did not err in concluding that reasonable efforts had failed to correct the conditions leading to the out-of-home

placement under Minn.Stat. § 260C.301, subd. 1(b)(5).

### C. Children are neglected and in foster care.

The district court also found that the children are neglected and in foster care within the meaning of Minn.Stat. § 260C.301, subd. 1(b)(8). Termination under this subdivision is appropriate if (1) the child is in foster care by court order; (2) the child's parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and (3) the child's parents, "despite the availability of needed rehabilitative services, have willfully failed to * * * meet reasonable expectations with regard to visiting the child or providing financial support for the child." Minn.Stat. § 260C.007, subd. 24 (2002). At issue in this case is whether the third criterion of this ground is met.

The court of appeals concluded that this statutory ground was not satisfied because the county failed to present evidence on what expectations are reasonable regarding visitation and child support for a parent who is incarcerated. Such a formulaic approach is not necessary, however, in child protection cases. The question is whether a parent has failed to meet reasonable expectations with respect to "visiting the child or providing financial support for the child." *Id.* The answer to that question can be answered by looking specifically at what actions a parent has taken and the circumstances in which a parent finds himself or herself. Here, appellant's own testimony provides proof that he fell completely short of meeting the reasonable expectations of the conduct and support a parent needs to provide to his or her child, whether in prison or at liberty.[4]

Although the district court did not make specific findings on what reasonable efforts appellant *could have* taken, the district court properly found that the efforts made by appellant were not sufficient and did not meet the reasonable expectations element of Minn.Stat. § 260C.007, subd. 24(c). Accordingly, the district court did not err in concluding that the children were neglected and in foster care within the meaning of Minn.Stat. § 260C.301, subd. 1(b)(8).

### D. Best interests of the children.

Having concluded that statutory grounds for termination exist, the only remaining issue is whether termination is in the best interests of the children. Both the district court and the court of appeals concluded that termination was in the children's best interests because the children would best be served by adoption, which would give them a permanent home.

Appellant argues that the district court's "best interests" analysis is flawed because the district court failed to address whether long-term foster care would also be in the children's best interests. According to appellant, long-term foster care is preferable to termination and adoption because it avoids termination of his parental rights. However, the legislature has clearly expressed a preference for either adoption or placement with a relative over long-term foster care if placement with the parents is not reasonably foreseeable. Minnesota Statutes § 260C.001, subd. 3 (2002), in relevant part, provides:

4. Indeed, appellant testified that he had maintained a relationship via mail and telephone with a third child not the subject of the petition. While a letter or a phone call alone should not be interpreted to be proof of a meaningful and legally recognizable relationship, the absence of such evidence here disposes of the inquiry.

The purpose of the laws relating to termination of parental rights is to ensure that:

\* \* \*

(2) if placement with the parents is not reasonably foreseeable, to secure for the child a safe and permanent placement, preferably with adoptive parents or a fit and willing relative through transfer of permanent legal and physical custody to that relative.

Further, the legislature has clearly supported a policy favoring adoption or relative placement over long-term foster care with other provisions limiting long-term foster care. *See, e.g.,* Minn.Stat. § 260C.201, subd. 11(d)(3) (2002) (providing that court can order long-term foster care only if it finds, inter alia, "compelling reasons that neither an award of permanent legal and physical custody to a relative, nor termination of parental rights is in a child's best interests"). Therefore, the district court was not required to consider long-term foster care as an alternative to adoption as part of its best interests analysis.

In this case, the record supports the district court's determination that adoption was in the children's best interests. The court found that the children were in need of an immediate permanent home with a family "capable of providing for their welfare." Accordingly, the court did not err in concluding that termination of parental rights to allow immediate adoption was in the children's best interests.

In summary, we hold that the court of appeals erred in holding that statutory grounds for termination were not established by clear and convincing evidence and that notwithstanding that fact, termination was in the best interests of the children. Because we conclude that the statutory grounds for termination were supported by clear and convincing evidence and that termination of parental rights is in the children's best interests, we affirm the result reached by the court of appeals.

Affirmed as modified.

PAGE, Justice (concurring specially).

On the record presented, I concur in the result reached by the court.