*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1407**

In the Matter of the Welfare of the Child of: G. A. and R. O. C. A., Parents.

**Filed February 21, 2017
Affirmed
Stauber, Judge**

Anoka County District Court
File No. 02-JV-15-304

R. O. C. A., Minneapolis, Minnesota (pro se respondent)

Kassius O. Benson, Madelyn Adams, Minneapolis, Minnesota (for appellant G.A.)

Considered and decided by Ross, Presiding Judge; Stauber, Judge; and Rodenberg, Judge.

# U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

On appeal from the denial of appellant-mother's petition to terminate the parental rights of respondent-father, appellant argues that (1) her due-process rights were violated because the district court improperly relied on facts not in the trial record; (2) the district court clearly erred by concluding that appellant failed to demonstrate by clear and convincing evidence that respondent legally abandoned the minor child; and (3) termination of respondent's parental rights is in the child's best interest.  We affirm.

## FACTS

Appellant-mother G.A. and respondent-father R.A. are the biological parents of C.A. The parties met in 1999, and C.A. was born in July 2001. The parties eventually separated, and in April 2008, the parties stipulated to child-custody matters; the parties were granted joint legal custody of C.A., with appellant granted sole physical custody, subject to respondent's unsupervised parenting time. Shortly thereafter, on June 26, 2008, the district court issued an order setting respondent's child-support obligation.

Because he was in the country illegally, respondent was ordered deported from the United States as a child in March 1995, at a hearing in which he was not present. But it was not until June 2008, shortly after the parties reached the stipulation for parenting time, that respondent was detained and officially deported from the United States to Ecuador. Since his deportation, C.A. has resided with appellant and her husband M.M., and respondent has had no contact with his daughter.

In March 2015, appellant petitioned to terminate respondent's parental rights on the grounds of abandonment. The petition alleged that the "purpose of the termination of parental rights in this matter is in the best interests of the minor child and will make way for an adoption by her stepfather, [M.M.]." Respondent entered a denial to the petition and, shortly thereafter, filed an answer and counter-petition to prevent termination of his parental rights. Specifically, respondent alleged that he had a relationship with C.A., but that "his forced deportation" and appellant's "efforts to keep [C.A.] from respondent and his family . . . prevented him from successfully making contact with [C.A.] from June 2008 to present."

Following an evidentiary hearing at which respondent appeared personally,[1] the district court found that appellant's "claim that respondent never formed a meaningful relationship with [C.A.] is belied by the findings [in the custody matter] and the fact that [appellant] stipulated to joint physical and unsupervised parenting time between respondent and the minor child." The district court also found that while in United States Immigration and Customs Enforcement (ICE) custody, respondent "consistently wrote and called" appellant, but appellant ignored his calls, did not respond to his letters, and otherwise "shut [respondent] out of the child's life." Moreover, the district court found that after he was deported, appellant thwarted the efforts by respondent's family to remain in contact with the child. And the court found that although respondent "has had no contact with the minor child since his deportation," it was "not for lack of trying" because he "made repeated efforts to contact the minor child," but appellant made his "quest almost impossible." Thus, the district court concluded that it was "not respondent's intention to abandon the minor child." The district court further concluded that "[e]ven if the court found abandonment," it was not in the child's best interests to proceed with the termination. Therefore, the district court denied appellant's petition to terminate respondent's parental rights. This appeal followed.

After the appeal was filed, respondent did not file a brief. Consequently, this court directed the appeal to proceed under Minn. R. Civ. App. P. 142.03.

---

[1] Respondent lawfully returned to the United States in December 2015, and is now a lawful permanent resident.

# DECISION

A district court may terminate parental rights if clear and convincing evidence establishes at least one statutory ground for termination and if termination is in the child's best interests. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004). On appeal, we review the district court's findings of fact for clear error. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). But we review the ultimate determination that the findings fit the statutory criteria for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

## I.

The parent-child relationship is among the fundamental rights protected by the constitutional guarantees of due process. *In re Welfare of Children of B.J.B.*, 747 N.W.2d 605, 608 (Minn. App. 2008). The applicable due-process standard in a termination of parental rights (TPR) proceeding arises out of the guarantee of fundamental fairness. *Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 1394-95 (1982); *B.J.B.*, 747 N.W.2d at 608. "Due process requires reasonable notice, a timely opportunity for a hearing, the right to counsel, the opportunity to present evidence, the right to an impartial decision-maker, and the right to a reasonable decision based solely on the record." *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008).

4

Appellant contends that, in assessing her credibility, the district court "improperly relied on facts not in the trial record," which "denied her of her right to an impartial trial, impartial adjudicator, and reasonable decision based solely on the record in violation of constitutional due process and the Minnesota Code of Judicial Conduct." To support her claim, appellant cites rule 2.9(C) of the Code of Judicial Conduct, which states: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." Appellant claims that under *State v. Dorsey*, 701 N.W.2d 238 (Minn. 2005), "automatic reversal is required" because her due process deprivation prejudiced her and "constitutes a structural error."

As an initial matter, appellant provides no support and no analysis for her claim that a violation of rule 2.9(C) necessitates reversal in a civil case. In *Dorsey*, the defendant relied on Minn. R. Crim. P. 26.03, subd. 14(3), which states that "[a] judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." In fact, the supreme court ultimately *reversed and remanded* in *Dorsey* based on the criminal defendant's Sixth Amendment right to an impartial judge and fact-finder. 701 N.W.2d at 253. Thus, *Dorsey* does not provide a basis for reversal, but even if it did, it would require a remand rather than a reversal for structural error.

Moreover, "[s]tructural errors resulting in automatic reversal occur only in a very limited class of cases." *Colbert v. State*, 870 N.W.2d 616, 624 (Minn. 2015) (quotation omitted). Instead, "[m]ost errors are trial errors, which are reviewed under a prejudicial-impact analysis to determine whether they require reversal and a new trial." *State v. Watkins*, 840 N.W.2d 21, 25-26 (Minn. 2013). The Minnesota Supreme Court has

5

applied this analysis to a due process challenge in a TPR case in which it held that "prejudice as a result of [an] alleged [due process violation] is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008). Therefore, for appellant to prevail on her due process claim, she must demonstrate error *and* prejudice. *See id.*; *see also D.F.*, 752 N.W.2d at 98 (applying harmless-error test to due process argument in a TPR case).

Appellant's first claimed error is that the district court found that appellant represented in her TPR petition that respondent "never had a relationship with the minor child since the child was born." Appellant argues that this finding is "contradicted by the document, which explicitly states [that] respondent 'has not seen or contacted [C.A.] or her mother since he was deported.'"

We disagree. Appellant's TPR petition does emphasize that respondent has had no contact with the minor child "since he was deported." But earlier in the petition, in the section referring to the "statutory grounds for the termination of parental rights," appellant asserts that "respondent has never had a relationship with [C.A.]." Thus, the district court's finding is supported by the record.

Appellant's second claimed error is that the district court "erroneously found that [appellant] failed to provide current addresses to respondent consistent with the June 26, 2008 custody order" because the record reflects that she maintained a P.O. Box consistent with the order. But appellant again mischaracterizes the district court's finding by reading it in isolation from the remaining paragraph. The finding attacked by appellant is

6

a footnote referencing the difficulties respondent encountered in attempting to communicate with appellant. Specifically, the district court found:

> Despite the very clear language of the June 26, 200[8], Order which stated "Each party shall notify the other of any changes in address, residence, or employment within seven days of the change[.]" [Appellant] failed to provide current addresses to respondent . . . . [Appellant] has lived in several different locations in the intervening years, all titled in [M.M.'s] name. [Appellant] maintains no social media presence where she could be located electronically.

Respondent testified that despite attempting to communicate with appellant through the P.O. Box, she never answered him or his family members. He also testified that he did not have appellant's address and had no other way of communicating with appellant. The district court found respondent's testimony to be credible and this court defers to the district courts credibility determinations. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 374-75 (Minn. 1990). Therefore, when read in context with the whole paragraph, the district court's finding that appellant concealed her location from respondent is supported by the record.

Appellant's third claimed error is that the district court erroneously found that appellant was "unrepresented" when she informed respondent's mother that she could contact appellant's attorney if appellant's mother wished to arrange a visit with the minor child. We acknowledge that there does not appear to be any specific evidence in the record supporting this finding. But there is also no evidence contradicting this finding. Moreover, appellant cannot establish that she was prejudiced by any error in the district court's finding. The district court's reference to appellant being unrepresented was made

in a footnote after the district court found that respondent's mother approached appellant at a community pool when appellant was with the minor child. The court found that appellant "would not let [respondent's mother] near the child," "threatened to call the police and have her deported," and "informed respondent's mother that she could contact [her] attorney." In the footnote, the district court found that appellant "was actually unrepresented at the time," and that her conduct was as "an example of [appellant] secreting the child from respondent and his family." The district court's finding regarding this incident is supported by the record, and regardless of whether she was represented by an attorney, supports the district court's determination that appellant was "secreting the child from respondent and his family."

Finally, the fourth error claimed by appellant is that the district court "improperly relied on evidence for purposes beyond the scope upon which it was admitted" by admitting the June 2008 final custody order "for the limited purpose of establishing whether child support was ordered and in what amount," but then "quoting and referencing the findings of fact from the final custody order to support the conclusion that [appellant] thwarted respondent's attempt to maintain a relationship with the minor child." But even if the district court erred, appellant cannot demonstrate that she was prejudiced by the error. Notwithstanding the June 2008 order, there is ample evidence in the record demonstrating that respondent formed a meaningful relationship with his daughter before he was deported, including as the district court found, the "fact that [appellant] stipulated to joint physical custody and unsupervised parenting time between respondent and the minor child." There is also evidence in the record demonstrating that

8

appellant was uncooperative and denied respondent access to his daughter.  As a result, the district court could have made these findings without referencing the June 2008 order.  Accordingly, appellant's due process claim fails.

**II.**

Abandonment is one of nine statutory criteria listed in Minn. Stat. § 260C.301, subd. 1(b) (2014), that serve as a basis to terminate parental rights.  A presumption of abandonment is created when "the parent has had no contact with the child on a regular basis and not demonstrated consistent interest in the child's well-being for six months and the social services agency has made reasonable efforts to facilitate contact," or when a child under age two has been deserted under circumstances that show intent not to return to care for the child.  Minn. Stat. § 260C.301, subd. 2(a) (2014).  But it is not necessary to prove one of the statutory presumptions to establish abandonment.  *Id.*; *In re Welfare of L.A.F.*, 554 N.W.2d 393, 397 (Minn. 1996).  "Abandonment may be established . . . if the parent has actually deserted the child and has an intention to forsake the duties of parenthood."  *In re Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004) (quotation omitted).

The presumptions for abandonment are not applicable in this case because this is not a case in which social services made reasonable efforts to facilitate contact.  Instead, appellant claims that respondent abandoned the child by actually deserting her with the intention to forsake the duties of parenthood.  She contends that the record illustrates a significant number of factors supporting a finding of abandonment, including that for over eight years, respondent (1) neglected the child and withheld parental affection from

9

her by failing to care for her or acknowledge her existence; (2) failed to maintain direct contact with the child; (3) failed to visit the child; (4) failed to inquire about the child; and (5) forsook the duties of parenthood by failing to pay child support. Thus, appellant argues that the district court erred by concluding that she failed to demonstrate by clear and convincing evidence that respondent abandoned the minor child.

We disagree. Abandonment must be intentional, rather than due to misfortune or misconduct alone. *L.A.F.*, 554 N.W.2d at 398. While incarceration alone is insufficient evidence of abandonment, when combined with other factors, such as parental neglect and withholding parental affection, it can support a finding that a parent has abandoned a child. *In re Children of Vasquez*, 658 N.W.2d 249, 254 (Minn. App. 2003).

Here, it is undisputed that respondent had no contact with the child after he was deported in 2008. But the district court "liken[ed] deportation to incarceration" because respondent "was not free to re-enter the country, just as an inmate is not free to depart incarceration." Thus, the district court concluded that respondent's unavailability to the child was "not voluntary" because he was "deported against his wishes." And, the district court found that it "was not respondent's intention to abandon the minor child," but rather it was appellant's efforts that thwarted respondent from staying in contact with the child.

The district court's findings are supported by the record. Respondent testified that after his relationship with appellant ended, appellant "disappeared" with C.A. and would not answer his calls. Respondent also testified that after a few months of having "no idea" of appellant or his daughter's whereabouts, he was eventually able to file a petition

for parenting-time and custody. But respondent testified that shortly after the court order awarding him visitation rights with C.A., he was placed in ICE custody where he called and wrote to appellant "many times" from his cell to no avail. Respondent further testified that after he was deported, he and his family members attempted to locate and communicate with appellant, but were unsuccessful. If believed, this evidence establishes that respondent did not intentionally desert the child to forsake the duties of parenthood. Although appellant claims that the evidence shows that respondent "had a myriad of means through which he could" contact the minor child but "voluntarily chose to utilize none of them," the district court believed respondent's testimony that his lack of contact with his daughter was unintentional and the result of appellant secreting the child from respondent. It is well settled that this court will not disturb the district court's credibility determinations because the district court is in a superior position to determine the credibility of witnesses. *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). Therefore, in light of the deference given the district court in assessing witness credibility, the district court did not abuse its discretion by concluding that appellant did not abandon the minor child. And because the district court did not abuse its discretion by concluding that appellant did not abandon the minor child, we need not address whether termination was in the child's best interests. *See R.W.*, 678 N.W.2d at 55 (stating that a petition for termination of parental rights may only be granted if one statutory ground for termination is established *and* termination is in the child's best interests).

      **Affirmed.**