*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1285**

In the Matter of the Welfare of the Children of: K. F. and M. L., Parents.

**Filed April 8, 2024**
**Affirmed**
**Johnson, Judge**

St. Louis County District Court
File No. 69-DU-JV-22-286

Rachel L.F. Weis, Weis Legal Solutions, Grand Rapids, Minnesota (for appellant-father M.L.)

Kimberly J. Maki, St. Louis County Attorney, Benjamin Ranallo, Assistant County Attorney, Duluth, Minnesota (for respondent St. Louis County Public Health and Human Services Department)

Jody M. Alholinna, St. Paul, Minnesota (for guardian *ad litem* Joan Mahle)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Halbrooks, Judge.*

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

The district court terminated a man's parental rights to a child. We conclude that the district court did not err by finding that the petitioner proved at least one statutory

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ground for termination and that termination is in the child's best interests. Therefore, we affirm.

**FACTS**

K.F. is the biological mother of a child, M.X.L., who was born in April 2021. M.L. is the father of the child due to his having signed a recognition of parentage. At the trial in this case, K.F. voluntarily terminated her parental rights to M.X.L. Only M.L.'s parental rights are at issue in this appeal.

As stated by the district court, K.F. had a "long-term struggle with substance abuse." K.F. had given birth in January 2020 to a child who tested positive at birth for the presence of methamphetamine and amphetamines. K.F. voluntarily terminated her parental rights to that child in early 2021.

The St. Louis County Public Health and Human Services Department became concerned about K.F. in January 2021, when law-enforcement officers executed a search warrant at her home and found heroin and methamphetamine and observed that K.F. was visibly pregnant. In addition, the county received a report in April 2021, that K.F. had tested positive for amphetamines at a pre-natal appointment. When M.X.L. was born, a sample of umbilical-cord blood tested positive for methamphetamine.

Soon after K.F.'s and M.X.L.'s discharge from the hospital, the county petitioned the district court for an adjudication that M.X.L. is a child in need of protection or services (CHIPS). In June 2021, K.F. admitted to a CHIPS adjudication, and the district court ordered that custody of M.X.L. be granted to the county and that M.X.L. be placed in foster care. The county developed case plans for both K.F. and M.L. M.L.'s case plan required

him to, among other things, find and maintain safe and drug-free housing, remain law abiding, not affiliate with anyone deemed unsafe or unlawful, maintain sobriety, and comply with drug testing.

In July 2021, M.L. was arrested on an outstanding arrest warrant. After he was released from jail, he moved out of the home that he had shared with K.F. M.L. returned to K.F.'s home in approximately November 2021, but he moved out again in February 2022. Throughout this period of time, M.L. repeatedly either failed to show up for drug tests or submitted samples that tested positive.

In March 2022, a search warrant was executed at M.L.'s residence. Law-enforcement officers found heroin and fentanyl. M.L. was arrested and charged with two counts of first-degree controlled-substance crime. Soon thereafter, M.L. was incarcerated at the Minnesota correctional facility in St. Cloud, apparently because of the revocation of probation that had been ordered for previous convictions of drug crimes. M.L. later was convicted of one count of first-degree controlled-substance crime for possessing drugs in his home in March 2022. In March 2023, he was sentenced to 95 months of imprisonment, with approximately 12 months of custody credit.

Meanwhile, the district court approved a trial home visit in K.F.'s home in January 2022. The CHIPS case was closed in April 2022 because K.F. was doing well. But the matter was reopened in September 2022 after the county learned that K.F. was using methamphetamine and heroin and was selling drugs from her home.

The county petitioned for the termination of K.F.'s and M.L.'s parental rights on September 13, 2022. The county alleged four statutory grounds for termination against

M.L. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8) (2022). The case was tried on July 13, 2023. During trial, K.F. stipulated to the voluntary termination of her parental rights. The county called five witnesses, including K.F. M.L. called three witnesses, including himself.

In August 2023, the district court filed an order in which it concluded that the county had proved three statutory grounds for termination and that termination of M.L.'s parental rights is in M.X.L.'s best interests. Accordingly, the district court granted the county's petition and terminated M.L.'s parental rights to M.X.L. M.L. appeals.

## DECISION

M.L. argues that the district court erred by granting the county's petition and terminating his parental rights.

This court reviews an order terminating parental rights "to determine whether the district court's findings address the statutory criteria and whether the district court's findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). "Parental rights are terminated only for grave and weighty reasons," *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990), but this court gives "considerable deference to the district court's decision to terminate parental rights," *S.E.P.*, 744 N.W.2d at 385. We apply a clear-error standard of review to a district court's findings of historical fact and an abuse-of-discretion standard of review to a district court's determinations concerning the existence of statutory grounds for termination, the child's best interests, and the ultimate decision to terminate parental rights. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App.

4

2011), *rev. denied* (Minn. Jan. 6, 2012); *see also In re Welfare of Child of A.M.C.*, 920 N.W.2d 648, 657 (Minn. App. 2018).

## I. Statutory Grounds

M.L. first argues that the district court erred by finding that the county proved three statutory grounds for the termination of his parental rights. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (8). Because only one statutory ground is necessary for the termination of parental rights, a termination may be affirmed if at least one statutory ground has been properly established. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004).

We begin by considering M.L.'s argument that the district court erred by concluding that he "is palpably unfit to be a party to the parent and child relationship." *See* Minn. Stat. § 260C.301, subd. 1(b)(4). This statutory ground exists if

> a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

*Id.*

The district court determined that M.L. is palpably unfit for multiple reasons. The district court noted that M.L. had been convicted of multiple drug crimes since 2019 and had not changed his behavior. The district court credited the testimony of M.L.'s probation officer, who testified that M.L. was likely to re-offend, in part based on M.L.'s prior statement that he had no intention of ceasing his drug-dealing. The district court also noted

5

M.L.'s testimony that he keeps drugs away from M.X.L. but expressly deemed that testimony to be not credible. The district court found that M.L. uses controlled substances based on evidence that he repeatedly tested positive for controlled substances or failed to show up for testing, contrary to his case plan. The district court also found that M.L. allowed M.X.L. to remain in the care of K.F. even when M.L. knew that she was abusing drugs. The district court further found that M.L. had exposed M.X.L. to potentially dangerous, non-law-abiding persons in the course of his drug trade. The district court stated that, as a consequence of his persistent criminal conduct, M.L. is incarcerated and unlikely to be released soon and, thus, unable to provide for M.X.L. either physically or financially, both at present and for the reasonably foreseeable future.

M.L. contends that the district court erred on the ground that its findings do not satisfy the statutory requirement of "a consistent pattern of specific conduct before the child." *See id.* To be clear, the statute requires "a consistent pattern of specific conduct before the child *or of specific conditions directly relating to the parent and child relationship*" that makes the parent unable to care for the child. *Id.* (emphasis added). The district court's findings concerning M.L.'s palpable unfitness are sufficiently connected to M.X.L. and to the parent-child relationship between M.L. and M.X.L. The district court reasoned that M.L.'s repeated sales of controlled substances and his substance use created the condition that M.L. is unable to care for M.X.L. while incarcerated and also would be unable to care for M.X.L. if he were not incarcerated because his behavior would endanger the child and impair his judgment while caring for the child.

6

M.L. also contends that the district court erred on the ground that substance abuse, by itself, is not a sufficient basis for a finding of palpable unfitness if the substance abuse does not affect a parent's ability to care for the child. He cites *In re Welfare of Children of T.R.*, 750 N.W.2d 656 (Minn. 2008), in which the supreme court stated that "our case law suggests that alcohol or substance use does not render a parent palpably unfit in the absence of a causal connection between that substance use and the parent's inability to care for the child." *Id.* at 662. But the district court found, as stated above, that M.L.'s use of controlled substances affected his ability to care for M.X.L. and would affect his ability to do so whenever he is released from prison. Furthermore, the district court's determination of palpable unfitness was not based solely on M.L.'s drug use; it was based on multiple factors.

M.L. further contends that he has expressed interest in the department of correction's Challenge Incarceration Program (sometimes called "bootcamp"), which might allow him to be released from prison earlier than indicated by his 95-month sentence. The district court noted M.L.'s interest in that program but found that it was uncertain whether and when M.L. might be accepted into the program. The district court's finding of uncertainty is appropriate. As a matter of law, M.L. will not be eligible for the program until he has "48 months or less in or remaining in [his] term of imprisonment." *See* Minn. Stat. § 244.17, subd. 2(a)(2) (2022).

Thus, the district court did not err by determining that M.L. is palpably unfit to be a party to the parent-child relationship. Because the existence of one statutory ground for termination is sufficient, we need not consider whether the district court erred by

7

concluding that the county also proved two other statutory grounds.  *See R.W.*, 678 N.W.2d at 55.

## II.  Best Interests

M.L. also argues that the district court erred by finding that the termination of M.L.'s parental rights is in M.X.L.'s best interests.

If a statutory basis for termination exists, the paramount consideration in a termination proceeding is the best interests of the child.  Minn. Stat. § 260C.301, subd. 7; *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 672 (Minn. 2008).  A district court may not order the termination of parental rights without determining that the termination is in the child's best interests.  *S.E.P.*, 774 N.W.2d at 385.  A best-interests analysis should include consideration of "all relevant factors," including, "a review of the relationship between the child and relatives and the child and other important persons with whom the child has resided or had significant contact." Minn. Stat. § 260C.511(a), (b) (2022).  Three factors must be balanced "when considering a child's best interests: '(1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child.'"  *In re Welfare of Child of S.B.G.*, 981 N.W.2d 224, 232 (Minn. App. 2022) (quoting *J.R.B.*, 805 N.W.2d at 905), *aff'd*, 991 N.W.2d 874 (Minn. 2023); *see also* Minn. R. Juv. Prot. P. 58.04(c)(2)(ii).  "Competing interests include such things as a stable environment, health considerations and the child's preferences." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992).

In considering M.X.L.'s best interests, the district court noted that he had been in an out-of-home placement for 612 days, which was 70 percent of his life at the time of

trial.  The district court found that the conditions that gave rise to the out-of-home placement had not been corrected.  The district court found that those conditions "would very likely endanger the child's physical, mental and emotional health."  The district court found that M.X.L. "requires and deserves to receive consistent care and guidance from a parental figure in a safe, stable and loving home environment free of violence, drugs, and criminal activity," that M.L. cannot provide such an environment, and that M.X.L. "is in a safe and stable foster home with his biological brother [and] the foster family is willing to adopt him."

M.L. contends that the district court erred on the ground that the disadvantages of extending M.X.L.'s out-of-home placement is lessened by the fact that he is so young as to be "unaware of the status of the foster home being temporary."  M.L.'s contention is undermined by the fact that M.X.L. will be considerably older before M.L. is likely to be released from prison.  M.L.'s contention also is inconsistent with the legislative policy of permanency, which is an important goal of the juvenile-protection statutes and does not vary based on the age of a child.  *See* Minn. Stat. § 260C.503, subd. 1(a) (2022) (requiring permanency proceedings within 12 months of child being in foster care or care of noncustodial parent).  In addition, M.L.'s contention is inconsistent with the testimony of the county's social worker, who testified that it would be in M.X.L.'s best interests to terminate M.L.'s parental rights because an extended out-of-home placement could cause him to develop "significant attachment issues" and "mental health concerns."

Thus, the district court did not err by determining that the termination of M.L.'s parental rights is in M.X.L.'s best interests.

In sum, the district court did not err by granting the county's petition and terminating M.L.'s parental rights.

**Affirmed.**